UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RE/MAX, LLC,

                        Plaintiff,              1:17-CV-0526
                                                        (GTS/CFH)

v.

ROBERT GOODMAN REALTY, LLC,
doing business as Re/Max Park Place,
doing business as Propertywiser.com,
doing business as Property Wizer, LLC;
BARBARA KAYE RUBIN, INC.,
doing business as Re/Max Park Place,
doing business as Propertywiser.com,
doing business as Property Wizer, LLC;
and ROBERT I. GOODMAN, JR.,

                        Defendants.
_____

APPEARANCES:                                        OF COUNSEL:

HESLIN ROTHENBERG FARLEY & MESITI P.C.      DAVID P. MIRANDA, ESQ.
  Counsel for Plaintiff                                TEIGE P. SHEEHAN, ESQ.
5 Columbia Circle
Albany, New York 12203

HOLLAND & HART LLP                                EMILY JOY COOPER, ESQ.
  Co-Counsel for Plaintiff                              NADYA C. DAVIS, ESQ.
One Boulder Plaza                                          TIMOTHY P. GETZOFF, ESQ.
1800 Broadway, Suite 300
Boulder, Colorado 80302

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this trademark infringement action filed by RE/MAX,

LLC ("Plaintiff"), against Robert Goodman Realty, LLC ("RGR"), Barbara Kaye Rubin, Inc.

("BKR"), and Robert I. Goodman, Jr. ("Goodman") (collectively "Defendants"), is Plaintiff's

motion for default judgment pursuant to Fed. R. Civ. P. 55(b). (Dkt. No. 16.) For the reasons stated below, Plaintiff's motion is granted.

## I.     RELEVANT BACKGROUND

### A.     Plaintiff's Motion for Default Judgment

#### 1.     Plaintiff's Complaint

Liberally construed, Plaintiff's Complaint asserts the following nine claims: (1) a claim of trademark counterfeiting pursuant to 15 U.S.C. § 1114 against Defendants; (2) a separate and distinct claim of trademark counterfeiting pursuant to 15 U.S.C. § 1114 against Defendants; (3) a claim of unfair competition pursuant to 15 U.S.C. § 1125(a) against Defendants; (4) a claim of copyright infringement pursuant to 17 U.S.C. § 501 against Defendants; (5) a claim of trademark infringement pursuant to N.Y. Gen. Bus. Law § 360-k, o against Defendants; (6) a claim of deceptive business practices pursuant to N.Y. Gen. Bus. Law § 360(h), *et seq.* against Defendants; (7) a claim of trademark infringement pursuant to New York common law against Defendants; (8) a claim of breach of contract pursuant to New York common law against BKR and Defendant Goodman; and (9) a claim of unfair competition pursuant to New York common law against Defendants. (*See generally* Dkt. No. 1.)

Generally, in support of these claims, Plaintiff's Complaint alleges as follows Goodman is the founder and owner of RGR and chief executive officer for BKR. (*Id.*) RGR and BRK are real estate sales and brokerage service providers. (*Id.*) Plaintiff is a franchise network of independently owned and operated real estate offices and their affiliated independent contractor/sales associates who are authorized to use the RE/MAX trademarks in connection with providing real estate brokerage services. (*Id.*) Plaintiff owns several U.S. trademark

registrations for a family of marks that reflect Plaintiff's stylized form service marks and word marks. (*Id.*) Plaintiff also owns a New York trademark registration for the RE/MAX word mark. (*Id.*)

On October 3, 2000, August 31, 2004, and January 11, 2011, BKR entered into separate, five-year franchise agreements with Plaintiff to own and operate RE/MAX real estate brokerages in Clifton Park (2000), Niskayuna (2004), and Saratoga Springs (2011), respectively, under the trade name "RE/MAX Park Place" ("Franchise Agreements"). (*Id.*) Pursuant to the Franchise Agreements, Goodman is a party to the agreement. (*Id.*) Further, on October 12, 2000, September 8, 2004, and February 11, 2011, respectively, Goodman signed a Guarantee and Assumption of Obligations for each of the Franchise Agreements, pursuant to which, he personally guaranteed performance under and agreed to be personally bound by and liable for breach of the Franchise Agreements. (*Id.*)

On September 16, 2008, the Niskayuna Franchise Agreement was terminated. (*Id.*) On July 14, 2015, BKR entered into a promissory note with Plaintiff recognizing that it was in default of payment obligations under the Clifton Park and Saratoga Springs Franchise Agreements ("Promissory Note"). (*Id.*) Pursuant to the Promissory Note, Defendants agreed to pay $133,000.00 in 36 equal monthly payments and that a default of the Promissory Note constituted a default under the Franchise Agreements. (*Id.*)

Defendants made seven payments of $3,000.00 pursuant to the Promissory Note, leaving an outstanding total of $112,000.00. (*Id.*) Pursuant to the Promissory Note, the outstanding amount accrues interest at 16% per annum. (*Id.*)

The Saratoga Springs Franchise Agreement was terminated in September 2016, at which time BKR owed Plaintiff $13,867.13 in delinquent fees.  (*Id.*)  The Clifton Park Franchise Agreement was also terminated in September 2016, at which time BKR owed Plaintiff $31,038.10 in delinquent fees.  (*Id.*)  The total due in delinquent fees was $44,905.23.  (*Id.*)

When a Franchise Agreement terminated, BKR was required to comply with the "De-Identification" obligations set forth in the Franchise Agreement.  (*Id.*)  The De-Identification obligations required BRK to, among other things, immediately and clearly distinguish its operations from RE/MAX, refrain from directly or indirectly identifying any business in which it is associated as being a current or former RE/MAX office, or otherwise hold itself out to the public in any way as being or having been affiliated with RE/MAX.  (*Id.*)  In addition, BKR was required to immediately remove any part of the interior or exterior decor as necessary to disassociate from RE/MAX, immediately erase RE/MAX from letterhead and the like, cancel all names that contain the RE/MAX mark, and refrain form using in any manner RE/MAX marks or any mark confusingly similar to the RE/MAX marks.  (*Id.*)

Despite the termination of the Franchise Agreements, Defendants continue to advertise and offer real estate brokerage services in New York in connection with the RE/MAX marks.  (*Id.*)  Further, Defendants have continued to use the RE/MAX Park Place trade name, the corporate name "RE MAX Park Place," which is still active with the New York Department of State, and the RE/MAX marks and copyrighted works on various websites.  (*Id.*)  In addition, Defendants have continued to use the RE/MAX mark on their storefront signs.  (*Id.*)

Based on the Franchise Agreement, Defendants agreed to pay Plaintiff certain fees in exchange for use of the RE/MAX marks and copyrighted works.  (*Id.*)  Had the Franchise

4

Agreements continued in force, which would have allowed Defendants' continued use of the RE/MAX marks, Defendants would owe Plaintiff at a minimum the following amounts: $15,020.00 for the Saratoga Springs location; $5,044.00 for the Clifton Park location; and $4,964.00 for the Niskayuna location. (*Id.*) Moreover, pursuant to the Franchise Agreements, Plaintiff is entitled to late charges and interest at the rate of 1.33% per month and legal expenses and fees. (*Id.*)

In total, Plaintiff alleges Defendants owe an outstanding amount of $112,000.00 owed on the Promissory Note, $44,905.23 in delinquent fees, and approximately $25,028.00 through May 2017 for Defendants' continued use of the RE/MAX marks and copyrighted works. (*Id.*) Therefore, in total Plaintiff is seeking approximately $181,933.23 in damages.

Based on these claims, Plaintiff seeks several forms of relief including the following: (1) preliminary and permanent injunctive relief enjoining Defendants from using the RE/MAX marks and copyrighted works; and (2) an award of damages in an amount fixed by the Court including but not limited to past-due fees, applicable interest, and other amounts due to the breach of contract, all Defendants' profits or gains resulting from Defendants' actions, reasonable attorneys' fees, costs, and exemplary damages due to the intentional nature of Defendants' acts.

### 2. Plaintiff's Service of Its Complaint and Defendants' Failure to Answer

On May 22, 2017, Plaintiff served its Complaint on Defendants Goodman, RGR, and BKR. (Dkt. No. 9; Dkt. No. 9, Attach. 1; Dkt. No. 9, Attach. 2.) As of the date of this Decision and Order, Defendants have not filed an Answer to the Complaint. (*See generally* Docket Sheet.)

### 3.   Clerk's Office's Entry of Default and Defendants' Non-Appearance

On July 19, 2017, Plaintiff filed a request for entry of default. (Dkt. No. 12.) On July 20, 2017, the Clerk of the Court entered default against Defendants, pursuant to Fed. R. Civ. P. 55(a). (Dkt. No. 13.) As of the date of this Decision and Order, Defendants have not appeared and attempted to cure that entry of default. (*See generally* Docket Sheet.)

### 4.   Plaintiff's Motion for Default Judgment and Defendants' Non-Response

On September 22, 2017, Plaintiff filed a motion for default judgment against Defendants pursuant to Fed. R. Civ. P. 55(b). (Dkt. No. 16.) As of the date of this Decision and Order, Defendants have filed no response to that motion. (*See generally* Docket Sheet.)

Generally, in support of its motion for default judgment, Plaintiff argues as follows: (1) Defendants' default establishes their liability; (2) because Defendants did not pay for amounts due and owed pursuant to the Promissory Note, the Franchise Agreements, and continued to use Plaintiff's marks and copyrighted works after termination of the Franchise Agreement, Plaintiff has been damaged in the amount of $231,989.23 (consisting of $112,000 due on the Promissory Note, $44,905.23 in delinquent fees, and three times the $25,028.00 owed for continued use of the marks and copyrights through May of 2017 due to the willful nature of Defendants' violations). (Dkt. No. 16, Attach. 1.) Plaintiff also seeks statutory damages in the amount of $60,000.00, reasonable attorneys' fees and costs, and a permanent injunction enjoining Defendants from future trademark infringement, unfair competition, deceptive business practices, counterfeiting, copyright infringement, and breach. (*Id.*) Familiarity with the particular grounds for Plaintiff's motion for default judgment against Defendants is assumed in this Decision and Order, which is intended primarily for the review of the parties.

## II.     RELEVANT LEGAL STANDARDS

"Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant." *Robertson v. Doe*, 05-CV-7046, 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008).  "First, under Rule 55(a), when a party fails to 'plead or otherwise defend . . . the clerk must enter the party's default.'" *Robertson*, 2008 WL 2519894, at *3 (quoting Fed. R. Civ. P. 55[a]).  "Second, pursuant to Rule 55(b)(2), the party seeking default judgment is required to present its application for entry of judgment to the court." *Id*.  "Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment." *Id*. (citing Fed. R. Civ. P. 55[b][2]).  "When an action presents more than one claim for relief . . . , the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties . . . if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

When a court considers a motion for the entry of a default judgment, it must "accept[ ] as true all of the factual allegations of the complaint . . . ." *Au Bon Pain Corp. v. Artect, Inc*., 653 F.2d 61, 65 (2d Cir. 1981) (citations omitted).  "However, the court cannot construe the damages alleged in the complaint as true." *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds v. Catone Constr. Co., Inc*., 08-CV-1048, 2009 WL 4730700, at *2 (N.D.N.Y. Dec. 4, 2009) (Scullin, J.) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 [2d Cir. 1999] [citations omitted]).  "Rather, the court must 'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds*, 2009 WL 4730700, at *2 (quoting *Alcantara*, 183 F.3d at 155 [citation omitted]).  This inquiry "involves two tasks: [1]

7

determining the proper rule for calculating damages on such a claim, and [2] assessing plaintiff's evidence supporting the damages to be determined under this rule." *Alcantara*, 183 F.3d at 155. Finally, in calculating damages, the court "need not agree that the alleged facts constitute a valid cause of action . . . ." *Au Bon Pain*, 653 F.2d at 65 (citation omitted).

## III.   ANALYSIS

### A.   Liability

After carefully considering Plaintiff's unopposed motion, the Court is satisfied that, under the circumstances, Plaintiff has met its modest threshold burden of establishing entitlement to default judgment against Defendants on the issue of liability.[1] The Court notes that Plaintiff's motion would survive even the heightened scrutiny appropriate on a contested motion. For example, for the reasons stated above in Part I of this Decision and Order, the Court finds that due notice of this action has been given to Defendants. However, no Answer has been filed and no one has appeared on behalf of Defendants. In addition, the Clerk of the Court has already entered default against Defendants, and Plaintiff has served Defendants with its motion for the issuance of default judgment. (Dkt. Nos. 12, 13, 16.) Plaintiff also served Defendants with this Court's Text Order dated April 3, 2018, and Plaintiff's supplemental affidavits related to this motion. (Dkt. Nos. 22, 25, 26.) Defendants have still neither responded to the motion nor appeared in this action. Finally, the Court finds that the factual allegations of Plaintiff's claims

---

[1]   In this District, a movant's burden with regard to an unopposed motion is lightened such that, in order to succeed, the movant need only show its entitlement to the relief requested in its motion, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1 n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases).

against Defendants are sufficient to state a claim upon which relief can be granted. *See W.A.W. Van Limburg Stirum et al. v. Whalen et al.*, 90-CV-1279, 1993 WL 241464, at *4 (N.D.N.Y. June 29, 1993) (Munson, J.) (holding that, "[b]efore judgment can be entered, the court must determine whether plaintiff's factual allegations are sufficient to state a claim for relief . . . the court may exercise its discretion to require some proof of the facts that must be established in order to determine liability") (internal quotation marks omitted).

For each of these reasons, the Court grants Plaintiff's motion for the issuance of default judgment on the issue of liability pursuant to Fed. R. Civ. P. 55(b) as to Defendants.

**B.    Damages**

After carefully considering Plaintiff's unopposed motion, the Court is satisfied that, under the circumstances, Plaintiff has met its burden of establishing a valid basis for the actual damages, permanent injunction, and attorneys' fees and expenses that it seeks. However, Plaintiff is not entitled to statutory damages. The Court notes that, while a hearing to fix the amount of damages may be conducted,[2] a hearing is not required where the Court has found that there is a basis for the damages specified in the default judgment.[3] Here, the Court makes such a finding.

---

[2]    Fed. R. Civ. P. 55(b).

[3]    *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) (noting that "it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment"); *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (noting that it is "not necessary for the district court to hold a hearing to fix damages after a default judgment had been entered where the court had 'relied upon detailed affidavits and documentary evidence supplemented by the District Judge's personal knowledge of the record gained during four years involvement with the litigation . . .'"); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991) (concluding that, where district judge was "inundated with affidavits, evidence, and oral presentations," a full evidentiary hearing was not necessary).

For example, in support of its damages request, Plaintiff provided, *inter alia*, the Franchise Agreements,[4] the Promissory Note including a schedule of payments,[5] the Affidavit of David P. Miranda, Esq.,[6] the Affidavit of Emily J. Cooper, Esq.,[7] the Affidavit of Timothy Getzoff, Esq., with exhibits attached thereto,[8] and the Affidavit of Terri Bohannan, with exhibits attached thereto,[9] which demonstrated that Defendants are indebted to Plaintiff in the amount of $231,989 in actual damages, $41,975.23 in attorneys' fees and expenses, and a permanent injunction.

### 1.     Actual Damages

Plaintiff seeks actual damages in the amount of $231,989.23. Plaintiff argues that Defendants owe $112,000.00 pursuant to the Promissory Note, $44,905.23 in past due fees owed prior to termination of the Franchise Agreements, and $25,028.00 for continuing to use the RE/MAX marks after termination of the Franchise Agreements. (Dkt. No. 16.)

In addition, Plaintiff requests that the Court treble the continuing-use damage award because Defendants' Lanham Act violations were willful. (*Id.*) The Lanham Act provides for treble damages in the Court's discretion anytime a defendant violates a right of a holder of a registered trademark, and mandates treble damages where the defendant willfully violated the right absent extenuating circumstances. 15 U.S.C. § 1117(a), (b). As a result, Plaintiff seeks

---

[4]   (Dkt. No. 1, Attachs. 4, 5, 6.)

[5]   (Dkt. No. 1, Attach. 7.)

[6]   (Dkt. No. 16, Attach. 2.)

[7]   (Dkt. No. 16, Attach. 3.)

[8]   (Dkt. No. 23.)

[9]   (Dkt. No. 24.)

$75,084.00 to represent Defendants' continued use of Plaintiff's marks after termination of the Franchise Agreements.

For the reasons set forth in Plaintiff's motion, the Court finds that Defendants acted in bad faith by continuing to trade on RE/MAX's good name long after termination of their Franchise Agreements. (Dkt. No. 16.) The Court also concludes that there are no extenuating circumstances that warrant denying Plaintiff the relief that it seeks. For these reasons, the Court finds that Plaintiff has met its burden of establishing a valid basis for damages, and that default judgment against Defendant, awarding Plaintiff $231,989.23 in compensatory damages is appropriate.

### 2. Statutory Damages

Plaintiff also seeks $60,000 in statutory damages pursuant to 17 U.S.C. § 504(c)(1) for two pieces of work that Defendants infringed. However, Plaintiff may elect to recover either statutory damages *or* actual damages and profits. 17 U.S.C. § 504(c)(1) (providing, in pertinent part, that "the copyright owner may elect . . . to recover, instead of actual damages and profits, an award of statutory damages . . . with respect to any one work . . . in a sum of not . . . more than $30,000 . . ."); *Cf. 7-ELEVEN, Inc., Plaintiff. v. Z-ELEVEN CONVENIENCE STORE, INC., Defendant*, 16-CV-4116, 2018 WL 1521859, at *5 (E.D.N.Y. Jan. 17, 2018) ("By providing for statutory damages, the Lanham Act envisions scenarios where the plaintiff would not be able to prove actual profits.").

While Plaintiff has been unable to determine Defendants' profits, it has been able to determine to a reasonable certainty, its damages.[10] Because, Plaintiff's actual damages are

---

[10] Plaintiff has not requested that the Court order Defendants to submit to an audit. *Century 21 Real Estate, LLC v. Raritan Bay Realty, Ltd.,* 07-CV-1455, 2008 WL 4190955, at *8 (E.D.N.Y. 2008).

11

significantly more than the requested statutory damages, the Court awards Plaintiff its actual damages, rather than its statutory damages.

### 3. **Permanent Injunction**

Plaintiff also asks that the Court permanently enjoin Defendants from future trademark infringement, unfair competition, deceptive business practices, counterfeiting, copyright infringement, and breach. Congress has made such relief available to "prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under. . . section 1125[a]." 15 U.S.C. § 1116(a).

To obtain a permanent injunction, a plaintiff must show a likelihood of confusion. *Polaroid Corp v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). However, "a finding of likelihood of confusion in an infringement action does not automatically compel the issuance of an injunction barring use of the junior user's mark." *Jim Beam Brands Co. v. Beamish & Crawford Ltd.*, 937 F.2d 729, 737 (2d Cir. 1991). Rather, the Court must balance the equities and determine whether injunctive relief would be appropriate. *Jim Beam Brands Co.*, 937 F.2d at 737. To the extent that the Court grants the permanent injunction, it must tailor the relief to be minimally intrusive. *Id.*

Plaintiff has established that there is a likelihood of confusion when Defendants continue to use the RE/MAX mark as to the source of their real estate brokerage services after termination of their Franchise Agreements. *Century 21 Real Estate, LLC v. Raritan Bay Realty, Ltd.*, 07-CV-1455, 2008 WL 4190955, at *9 (E.D.N.Y. Sept. 3, 2008); *Dynamic Microprocessor Assocs., Inc. v. EKD Computer Sales & Supplies*, 92-CV-2787, 1997 WL 231496 at *16-17 (E.D.N.Y. April 14, 1997); *Bandag v. Lewis General Tires, Inc.*, 76-CV-0541, 1980 WL 30328, at *11, 14

(W.D.N.Y. Mar. 24, 1980), *aff'd,* 718 F.2d 1084 (2d Cir. 1983); *Burger King Corp. v. Mason,* 710 F.2d 1480, 1493 (11th Cir. 1983); *Hospitality Int'l, Inc. v. Mahtani*, 97-CV-0087, 1998 WL 35296447, at *20 (M.D.N.C. Aug. 3, 1998).

After termination of the Franchise Agreements, Defendants continued to use the RE/MAX marks in connection with their advertising and offering of real estate brokerage services in New York. Defendants have failed to respond to the Complaint or this action in any fashion. By virtue of Defendants' default, they are deemed to be willful infringers. *Burberry Ltd. v. Euro Moda, Inc.*, 08-CV-5781, 2009 WL 4432678, at *3 (S.D.N.Y. Dec. 4, 2009).

Therefore, the Court permanently enjoins Defendants from using, imitating, copying, duplicating, or otherwise making use of any RE/MAX marks, and any mark confusingly similar to the RE/MAX marks.

### 4. **Attorneys' Fees and Costs**

Plaintiff also seeks attorneys' fees and costs under 15 U.S.C. § 1117(a) which permits the award of reasonable attorneys' fees in "exceptional" cases at the discretion of the District Court. "[D]eliberate and willful infringement can render a case exceptional and thus support an award of attorneys' fees. *Centaur Comm'ns, Ltd. v. A/S/M Comm'ns, Inc.*, 830 F.2d 1217, 1229 (2d Cir. 1987); *see Vuitton Et Fils, S.A. v. Crown Handbags*, 492 F.Supp. 1071, 1078 (S.D.N.Y.1979). Based upon the above discussion concerning Defendants' continued bad faith and willful and deliberate infringement of Plaintiff's mark, the Court finds that Plaintiff is entitled to attorneys' fees and costs of the action in addition to the remedies awarded above.

Pursuant to the Affidavit of Timothy P. Getzoff, Esq., the Court finds that Plaintiff is entitled to $41,975.23 in attorneys' fees and costs associated with this litigation.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for entry of default judgment against Defendants (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment against Defendants in the amount of **TWO HUNDRED SEVENTY-THREE THOUSAND NINE HUNDRED SIXTY-FOUR AND FORTY-SIX CENTS ($273,964.46)**, which accounts for $231,989.23 in actual damages and $41,975.23 in attorneys' fees and costs; and it is further

**ORDERED** that the Defendants are **PERMANENTLY ENJOINED** as follows:

1. Defendants and any of their principals, agents, servants, employees, successors, and assigns and all those in privity, concert, or participation with them, are permanently enjoined from using, imitating, copying, duplicating, or otherwise making any use of the RE/MAX Marks, any mark confusingly similar to the RE/MAX Marks, or any Copyrighted Work in connection with providing, advertising, or promoting real estate or related service, including without limitation:

    a. imitating, copying, duplicating, or otherwise making any use of the RE/MAX Marks or Copyrighted Works, any mark confusingly similar thereto;

    b. manufacturing, producing, distributing, circulating, selling, displaying, or otherwise disposing of any printed, electronic, or website material which bears any copy or colorable imitation of the RE/MAX Marks or the Copyrighted Works;

c. using any unauthorized copy or colorable imitation of the RE/MAX Marks or Copyrighted Works in such a fashion as is likely to relate or connect Defendants with RE/MAX or the RE/MAX Network;

d. using any false designation of origin or false description which can or is likely to lead the trade or public, or individual members thereof, to believe mistakenly that any service advertised, promoted, offered, or sold by Defendants is sponsored, endorsed, connected with, approved, or authorized by RE/MAX;

e. causing likelihood of confusion or injury to RE/MAX's business reputation and to the distinctiveness of the RE/MAX Marks and Copyrighted Works by unauthorized use of the same or anything confusingly or substantially similar thereto;

f. engaging in any other activity constituting unfair competition, infringement, dilution, or counterfeiting of the RE/MAX Marks or Copyrighted Works, or RE/MAX's rights in, or to use, or to exploit the same;

g. engaging in any other activity constituting deceptive business practices relating to the RE/MAX Marks or Copyrighted Works or RE/MAX's rights in, or to use, or to exploit the same;

h. engaging in any other activity constituting copyright infringement of the Copyrighted Works or RE/MAX's rights in or to the same;

      i.    assisting, aiding, or abetting another person or business entity in engaging or performing any of the activities enumerated in subparagraphs (a) through (g).

2.    Defendants, pursuant to 15 U.S.C. §1118, shall deliver up for destruction, or show proof of such destruction or sufficient modification to eliminate the infringing matter, all articles, packages, wrappers, products, displays, labels, signs, vehicle display or signs, circulars, kits, packaging, letterhead, business cards, promotional items, clothing, literature, sales aids, receptacles, building signs, or other matter in the possession, custody, or control of Defendants or its agents bearing the RE/MAX Marks in any manner, or any mark that is confusingly similar to or a colorable imitation of the RE/MAX Marks, whether alone or in combination with other words or terms.

Date:  June 19, 2018
          Syracuse, NY

                                              Hon. Glenn T. Suddaby
                                              Chief U.S. District Judge